1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JAIME PEREZ and NANCY SILVA,              No.  1:15-CV-00259-KJM-SKO
      individually and on behalf of others
12    similarly situated,

13                      Plaintiffs,             ORDER

14           v.

15    SUN PACIFIC FARMING
      COOPERATIVE, INC., and DOES 1
16    through 10,

17                      Defendants.

18

19

20           Jaime Perez and Nancy Silva are seasonal field workers previously employed by

21    Sun Pacific Farming Cooperative, Inc.  They allege Sun Pacific does not pay them all wages it

22    owes and seek to certify a class of similarly situated workers.  Sun Pacific has moved to dismiss

23    for failure to state a claim upon which relief can be granted.  The court held a hearing on April

24    24, 2015, at which Gregory Karasik appeared for plaintiffs and Traci Bernard-Marks appeared for

25    Sun Pacific.  After considering the parties' initial briefing, arguments at the hearing, and their

26    supplemental authority submitted after hearing, the court took the matter under submission and

27    now DENIES the motion.

28

I.      BACKGROUND

For purposes of this motion, the court assumes the complaint's allegations are true. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Since 2008, the plaintiffs have worked for Sun Pacific during the harvest season, October through March.  Compl. ¶ 4, ECF No. 1.  Sun Pacific paid the plaintiffs a piece rate; that is, rather than an hourly wage or salary, they were paid by the amount of produce they harvested.  *Id.* ¶ 1.  Not all of the plaintiffs' working time was spent harvesting produce.  Sun Pacific required they report to work at a specific time, but after reporting, they were often made to wait an hour or more before starting.  *Id.* ¶¶ 1, 4.  Sometimes after waiting there was no work at all.  *Id.* ¶ 1.  About once a week, the plaintiffs also spent time traveling to a new field.  *Id.* ¶ 4.  And each day plaintiffs took two fifteen-minute rest breaks.  *Id.*  During these intervals—waiting to start work, traveling between fields, and taking rest breaks—plaintiffs could not perform piece-rate work to increase their daily wages.  *Id.* ¶¶ 1, 4.

The plaintiffs filed a complaint in this court on February 19, 2015.  *Id.* at 13.  They assert five claims for relief, each founded on the central claim of unpaid, non-piece-rate work: (1) failure to pay minimum wages under California Labor Code §§ 1194, 1194.2, and 1197, *id.* ¶¶ 11–16; (2) unfair competition under California Business and Professions Code § 17200, *id.* ¶¶ 17–21; (3) failure to provide accurate wage statements under California Labor Code § 226, *id.* ¶¶ 22–29; (4) failure to pay wages upon termination under California Labor Code §§ 201, 202, and 203, *id.* ¶¶ 30–39; and (5) failure to comply with the federal Migrant and Seasonal Agricultural Workers Protection Act (AWPA), 29 U.S.C. §§ 1832 and 1854, *id.* ¶¶ 40–49.  They sue on behalf of a putative class of "all other similarly situated Field Workers."  *Id.* ¶ 8.

On March 16, 2015, Sun Pacific moved to dismiss on the basis of Federal Rule of Civil Procedure 12(b)(6).  Mot., ECF No. 9.  First, it argues the complaint is a mere collection of legal conclusions and must be dismissed.  *Id.* at 5–8.  Second, it argues California law does not guarantee piece-rate workers a separate hourly wage for mandated rest breaks; rather, as long as an employee's wage is greater than the minimum wage when averaged over the entire working day, including rest breaks, an employer is not liable.  *Id.* at 8–14.  The plaintiffs opposed the

2

1    motion, Opp'n, ECF No. 17, and Sun Pacific replied, Reply, ECF No. 19.  At hearing, the court

2    allowed the parties to submit additional case citations in support of their positions on the second

3    argument described above.  *See* Letter Briefs, ECF Nos. 23, 24.

4    II.      LEGAL STANDARD

5            A party may move to dismiss for "failure to state a claim upon which relief can be

6    granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a

7    "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

8    *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).  The court

9    assumes these factual allegations are true and draws reasonable inferences from them.  *Ashcroft v.*

10   *Iqbal*, 556 U.S. 662, 678 (2009).

11           A complaint need contain only a "short and plain statement of the claim showing

12   that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations,"

13   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than

14   unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*,

15   556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of a claim's elements do

16   not alone suffice.  *Id.*  Evaluation under Rule 12(b)(6) is a context-specific task drawing on

17   "judicial experience and common sense."  *Id.* at 679.  And aside from the complaint, district

18   courts have discretion to examine documents incorporated by reference, *Davis v. HSBC Bank*

19   *Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); affirmative defenses based on the complaint's

20   allegations, *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013); and proper subjects of

21   judicial notice, *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 976 (9th Cir. 2012).

22   III.     PLEADING ADEQUACY

23           California law grants "any employee receiving less than the legal minimum wage"

24   the right "to recover in a civil action the unpaid balance of the full amount of this minimum wage

25   . . . ."  Cal. Lab. Code § 1194(a).  The minimum wage is the amount defined by the Industrial

26   /////

27   /////

28   /////

3

1    Welfare Commission (IWC), *id.* § 1197, $8.00 per hour beginning January 1, 2008, and $9.00 per

2    hour beginning July 1, 2014, Def.'s Request J. Notice, Ex. B, at 1, ECF No. 10-2.[1]

3              Here, Sun Pacific does not dispute its obligation to pay at least a minimum wage,

4    but argues the complaint must be dismissed because it lacks "factual specifics" describing Sun

5    Pacific's method of payment, its operations, whether payments were designed to compensate

6    employees for non-piece work, and "exactly how" its payment system denied the plaintiffs

7    minimum wages. Mot. at 7–8 (emphasis omitted). The complaint is generalized, but not fatally

8    so. As noted above, federal law requires a "short and plain statement" describing why the

9    claimant is entitled to relief, Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Twombly*,

10   550 U.S. at 555. Rule 12(b)(6) allows a defendant to test the complaint's legal sufficiency,

11   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001), not whether the plaintiffs will win, *see*

12   *Iqbal*, 556 U.S. at 678. The complaint's theory must be only "plausible." *Id.* It need not

13   anticipate affirmative defenses. *See Cathcart v. Sara Lee Corp.*, No.09-5748, 2010 WL 1486452,

14   at *1 (N.D. Cal. Apr. 13, 2010) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

15             Plaintiffs have described the nature of their work and the activities for which they

16   did and did not receive compensation and for which they seek unpaid wages. *See* Compl. ¶¶ 1, 4.

17   Their theory of relief is understandable and plausible. They allege they were required to wait

18   without pay, travel between fields without pay, and take rest breaks without pay; these are not

19   bare legal conclusions. *See also Reinhardt v. Gemini Motor Transp.*, 869 F. Supp. 2d 1158, 1168

20   (E.D. Cal. 2012) ("Because the Complaint identifies five specific work activities for which

21   Plaintiffs received no compensation under any of [the defendant's] pay rubrics, dismissal of this

22   cause of action is inappropriate."); *Ontiveros v. Zamora*, No. 08-567, 2009 WL 425962, at *2

23   (E.D. Cal. Feb. 20, 2009) ("Plaintiff alleges that [the defendant's] payment system violates

24   California labor laws because it does not compensate employees for work they perform that is not

25   'piece' work, such as attending meetings and training sessions, setting up their work stations, and

26

27   [1] The court grants Sun Pacific's unopposed request for judicial notice of this document
     because it is a public record whose accuracy is not subject to reasonable dispute. *See* Fed. R.
     Evid. 201.

28

4

1   having a state-mandated work break. . . . It appears that plaintiff has alleged a valid theory of

2   recovery on this issue such that judgment on the pleadings is not appropriate.").  The complaint

3   states a plausible claim for unpaid minimum wages.

4          Sun Pacific does not attack each of plaintiffs' additional wage claims separately,

5   opting instead to challenge the complaint's minimum-wage allegations as an essential lynchpin.

6   *See* Mot. 7 ("Plaintiffs' unpaid wage assertions . . . underlie each of their five claims for relief

7   . . . .").  Because the court denies the motion on this first claim, it does not address the adequacy

8   of each additional wage claim.

9   IV.      COMPENSATION FOR REST BREAKS

10          Sun Pacific also seeks dismissal of the complaint's rest-break claims.  It argues

11   "an employer lawfully may pay piece rate employees for rest period time through their total piece

12   rate earnings, as long as their total daily earnings average out to at least the minimum wage for all

13   time that must be paid (i.e., 'hours worked' and rest periods)."  Mot. 13.  A California Court of

14   Appeal recently rejected an identical argument.  *See Bluford v. Safeway Stores, Inc.*, 216 Cal.

15   App. 4th 864, 870–72 (2013).  No California Supreme Court case is squarely on point, and no

16   other state appellate court has addressed the independent compensability of a piece-rate worker's

17   rest breaks in particular.

18          Because this court has supplemental jurisdiction over plaintiffs' rest-break claims,

19   it applies the law of California to that claim as if sitting in diversity.  *Bass v. First Pac. Networks,*

20   *Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).  When a federal court applies California law to a

21   question for which no California Supreme Court decision provides a relevant precedent, the

22   federal court must follow any germane decision of the California appellate courts unless it finds

23   "convincing evidence" the California Supreme Court "likely would not follow it."  *Ryman v.*

24   *Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007).  Absent such "convincing evidence,"

25   this court is therefore bound to apply the *Bluford* decision and to deny Sun Pacific's motion.

26          Sun Pacific argues it has found convincing evidence that would likely cause the

27   California Supreme Court to disapprove of *Bluford*.  Its position rests on interpretation of the

28   Wage Orders issued by the IWC.  The California Legislature established the IWC in the early

5

1    Twentieth Century and endowed it with authority to issue wage orders. *Brinker Rest. Corp. v.*

2    *Superior Court*, 53 Cal. 4th 1004, 1026 (2012). Although the IWC was defunded in 2004, its

3    wage orders remain in effect. *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 43

4    (2013). These orders describe certain minimum standards of employment, including for wages,

5    hours, and working conditions. *Brinker*, 53 Cal. 4th at 1026. The California Supreme Court

6    interprets the IWC's wage orders as statutes and accords them commensurate deference. *Id.* at

7    1027. The ordinary rules of statutory interpretation therefore apply. *Id.*

8              In California, when construing a statute, a court "must 'ascertain the intent of the

9    Legislature so as to effectuate the purpose of the law.'" *People v. Tindall*, 24 Cal. 4th 767, 772,

10   (2000) (quoting *People v. Valladoli*, 13 Cal. 4th 590, 597 (1996)). The court first looks to the

11   words of the statute, "giving them their usual and ordinary meaning." *Lennane v. Franchise Tax*

12   *Bd.*, 9 Cal. 4th 263, 268 (1994) (quoting *DaFonte v. Up-Right, Inc.*, 2 Cal. 4th 593, 601 (1992)).

13   "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have

14   meant what it said, and the plain meaning of the language governs.'" *Id.* (quoting *Kizer v. Hanna*,

15   48 Cal. 3d 1, 8 (1989)). California courts follow the "knows-how-to-say" rule with respect to rest

16   breaks in particular: "If the IWC had wanted to relieve an employee of all duty during a rest

17   period, including the duty to remain on call, it knew how to do so." *See Augustus v. ABM Sec.*

18   *Servs., Inc.*, 233 Cal. App. 4th 1065, 1077–78 (2014), *review granted*, 347 P.3d 89 (Cal. Mar. 5,

19   2015).

20             If necessary, the court "next consider[s] the context in which . . . words appear,

21   attempting to harmonize the words of the statute within the overall statutory scheme." *Valladoli*,

22   13 Cal. 4th at 599. A court may also consider a statute's legislative history: "Both the legislative

23   history of the statute and the wider historical circumstances of its enactment may be considered in

24   ascertaining the legislative intent." *Dyna-Med, Inc. v. Fair Employment & Hous. Comm'n.*,

25   43 Cal. 3d 1379, 1387 (1987); *see also Valladoli*, 13 Cal. 4th at 602; *Lennane*, 9 Cal. 4th at 268

26   (investigating a statute's "enactment history"). "If the language [of an IWC wage order] can be

27   interpreted to have more than one reasonable meaning, a court may consider a variety of extrinsic

28   aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative

6

1    history, public policy, contemporaneous administrative construction, and the statutory scheme of

2    which the statute is a part." *Gonzalez*, 215 Cal. App. 4th at 44 (citation and internal quotation

3    marks omitted).

4           Here, the parties appear to agree that Wage Order 14-2001, Cal Code Regs., tit. 8,

5    § 11140, applies to this case. *See* Compl. ¶ 9(b); Mot. 9 & n.3.[2]   That wage order requires the

6    payment of a wage "not less than the applicable minimum wage for all hours worked in the

7    payroll period, whether the remuneration is measured by time, piece, commission, or otherwise."

8    *Id.* § 11140(4)(B).  It also provides, "Every employer shall authorize and permit all employees to

9    take rest periods . . . .  Authorized rest period time shall be counted as hours worked for which

10   there shall be no deduction from wages."  Cal Code Regs., tit. 8, § 11140(12).  In *Bluford*, the

11   California Court of Appeal construed the identically worded provision of another wage order.

12   *See* 216 Cal. App. 4th at 872 (citing Cal. Code Regs., tit. 8, § 11090(12)).  It concluded that

13   "[u]nder the California minimum wage law, employees must be compensated for each hour

14   worked at either the legal minimum wage or the contractual hourly rate, and compliance cannot

15   be determined by averaging hourly compensation."  *Id.* (citing, among other cases, *Cardenas v.*

16   *McLane FoodServices, Inc.*, 796 F. Supp. 2d 1246, 1252 (C.D. Cal. 2001); and *Armenta v.*

17   *Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005)).  The plaintiff in that case was therefore entitled

18   to a minimum hourly wage for time spent on mandatory rest breaks.  *Id.*

19          Reasoning adopted by other California state courts leads to the same conclusion.

20   *See Gonzalez*, 215 Cal. App. 4th at 40–41 ("[W]e conclude that [employees] were entitled to

21   separate hourly compensation for time spent waiting for repair work or performing other non-

22   repair tasks directed by the employer during their work shifts . . . ."); *Armenta*, 135 Cal. App. 4th

23

24          [2] Wage Order 14-2001 applies to "all persons employed in an agricultural occupation
     whether paid on a time, piece rate, commission, or other basis," Cal Code Regs., tit. 8,
25   § 11140(1), and specifically to "[t]he harvesting of any agricultural or horticultural commodity,
     including but not limited to, picking, cutting, threshing, mowing, knocking off, field chopping,
26   bunching, baling, balling, field packing, and placing in field containers or in the vehicle in which
     the commodity will be hauled, and transportation on the farm or to a place of first processing or
27   distribution," *id.* § 11140(2)(D)(4).
28
                                                      7

1   at 324 (holding employees were entitled to at least a minimum hourly wage for uncompensated

2   time spent traveling, loading equipment and supplies, doing paperwork, and maintaining

3   company vehicles).  The same is true of California federal district court decisions.  *See Cardenas*,

4   796 F. Supp. 2d at 1252 ("It is undisputed that [the defendant's] pay formula used a calculation

5   consisting of miles, stops, and products—and did not separately compensate for pre- and post-

6   shift duties.  Even if [the defendant] communicated to its employees that this piece-rate formula

7   was intended to compensate for pre-and post-shift duties, the fact that it did not separately

8   compensate for those duties violates California law."); *Carrillo v. Schneider Logistics, Inc.*,

9   823 F. Supp. 2d 1040, 1044 (C.D. Cal. 2011) ("California law does not permit *any* time to be

10  uncompensated. . . . Where employees are purportedly paid by the piece, the employer must

11  separately compensate employees for all hours spent performing non-piece rate work." (emphasis

12  in original)); *Ontiveros v. Zamora*, No. 08-567, 2009 WL 425962, at *3 (E.D. Cal. 2009)

13  ("Plaintiff alleges that there are activities that are necessary and incidental to performing the work

14  for which an employee can receive piece rate compensation, such as preparing one's work station

15  or attending training.  Because these tasks are essential to the piece rate work and are

16  uncompensated, the compensation scheme would appear to violate the minimum wage laws

17  . . . .").  The *Cardenas* and *Ontiveros* courts specifically concluded rest breaks are independently

18  compensable.  *See Cardenas*, 796 F. Supp. 2d at 1249–50, 1253; *Ontiveros*, 2009 WL 425962,

19  at *2.

20              In each of these cases the court reached its decision without referring to the Wage

21  Orders' adoption history, an omission Sun Pacific argues was error.  *See* Mot. at 14.  Sun

22  Pacific's argument rests on a citation to the minutes of an IWC meeting on March 7, 1947.  *See*

23  Def.'s Request J. Notice, Ex. C, at 7–8, ECF No. 10-2.[3]  Those minutes report, in relevant part, as

24  follows:

25

26          [3] The court grants Sun Pacific's unopposed request for judicial notice of this document.
    *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("Legislative history is properly
27  a subject of judicial notice. . . . We may [also] take judicial notice of records and reports of
    administrative bodies." (citations and internal quotation marks omitted)).
28

1

2

3

4

5

6

7

8

> The Commission considered the application of the rest period provision to piece workers, particularly with reference to the provision that: "No wage deduction shall be made for such rest period."   The Commission believes that rest periods properly spaced are conducive to increased production and greater efficiency, and therefore the piece workers' opportunity for earning is increased when a rest period is taken.   However, the piece workers' earnings for the entire day, including rest period time, must be not less than the required minimum wage.   It is the intent of the Commission that the rest period section will not be construed to mean that any additional time rate payment is due any worker whose wages are computed on an individual production basis, unless it can be shown that a particular rest period is of such a nature that the employer is depriving the employee of the opportunity to make his usual daily earnings.

9  *Id.* At least as quoted in these minutes, the Wage Order provision in question—"No wage

10  deduction shall be made for such rest period"—differs slightly from the current provision, which

11  includes the precatory phrase, "Authorized rest period time shall be counted as hours worked,"

12  before prohibiting any "deduction from wages," Cal Code Regs., tit. 8, § 11140(12).  This

13  difference is negligible given Sun Pacific's proposed averaging method, which accounts in its

14  denominator for all hours worked, including rest breaks.  It also appears the IWC never

15  disclaimed this interpretation.  *See* Def.'s Request J. Notice Exs. G–N, ECF Nos. 10-4, 10-5.[4]

16          Legislative history is just one piece of the statutory interpretation puzzle.  *See*

17  *Dyna-Med*, 43 Cal. 3d at 1387 (holding the legislative history "may be considered," not must);

18  *Mardardo F. v. Superior Court*, 164 Cal. App. 4th 481, 485 (listing "statutory context and

19  legislative history" as among the "various interpretive aids" a court may use to find legislative

20  intent).  Here, nearly sixty-year-old legislative history cannot overcome the considerable

21  decisional authority described above, all of which notes California's "strong public policy in

22  favor of full payment of wages for all hours worked." *Armenta v. Osmose, Inc.*,

23  135 Cal. App. 4th 314; *see also, e.g.*, *Brinker*, 53 Cal. 4th at 1027 ("[T]he meal and rest period

24  requirements . . . have long been viewed as part of the remedial worker protection framework.

25  Accordingly, the relevant wage order provisions must be interpreted in the manner that best

26

27      [4] The court grants Sun Pacific's unopposed request for judicial notice of these documents. *See supra* note 3.

28

1    effectuates that protective intent." (citations and internal quotation marks omitted)); *Gonzalez*,

2    215 Cal. App. 4th at 44 ("State wage and hour laws reflect the strong public policy favoring

3    protection of workers' general welfare and society's interest in a stable job market." (citation and

4    internal quotation marks omitted)).

5              Sun Pacific's position also runs contrary to an independent line of reasoning

6    reflected in *Gonzalez* and *Armenta*.  *See Gonzalez*, 215 Cal. App. 4th at 50–51; *Armenta*,

7    135 Cal. App. 4th at 320.  In each of those decisions, the court discussed Labor Code section 223,

8    which bars an employer from "secretly pay[ing] a lower wage while purporting to pay the wage

9    designated by [any] statute or contract."  Cal. Lab. Code § 223.  The *Gonzalez* court illustrated

10   how adopting an averaging theory like that advocated by Sun Pacific would undercut section

11   223's effect:

12   
13   
14   
15   
16   
17   
18   
19   
20
> [A] technician who works four piece-rate hours in a day at a rate of $20 per hour and who leaves the job site when that work is finished has earned $80 for four hours of work.  A second technician who works the same piece-rate hours at the same rate but who remains at the job site for an additional four hours waiting for customers also earns $80 for the day; however, averaging his piece-rate wages over the eight-hour work day results in an average pay rate of $10 per hour, a 50 percent discount from his promised $20 per hour piece-rate.  The second technician forfeits to the employer the pay promised "by statute" under Labor section 223 because if his piece-rate pay is allocated only to piece-rate hours, he is not paid at all for his nonproductive hours. . . . The foregoing analysis is not limited to collective bargaining agreements, as [the defendant] suggests.  It applies whenever an employer and employee have agreed that certain work will be compensated at a rate that exceeds the minimum wage and other work time will be compensated at a lower rate.

21   215 Cal. App. 4th at 50–51.  The same reasoning applies to rest breaks, which the Labor Code

22   requires, and which the wage orders define to be "hours worked."  Cal Code Regs., tit. 8,

23   § 11140(12).

24             Finally, *Bluford* controls the court's decision here despite the wage order's

25   clarification that "'authorized rest periods need not be recorded.'"  Mot. 13 n.6 (emphasis

26   omitted) (quoting Cal Code Regs., tit. 8, § 11140(7)(A)).  The context of this provision reveals

27   the wage order's intent to avoid imposing a pointless recordkeeping burden on employers:

28   mandatory rest periods are hours worked regardless of when they occur and must be

1    compensated.  Requiring an employer to note the time and frequency of a break would impose an

2    unnecessary cost.  When an employer pays its employees by the piece, however, those employees

3    cannot add to their wage during rest breaks; a break is not for rest if piece-rate work continues.

4    To be compensated, then, a separate non-piece-rate wage must be paid for rest breaks.  The

5    California Division of Labor Standards Enforcement (DLSE) has adopted similar reasoning in its

6    Enforcement Policies and Interpretations Manual:[5]

> [I]f, as a result of the directions of the employer, the compensation received by piece rate or commissioned workers is reduced because they are precluded, by such directions of the employer, from earning either commissions or piece rate compensation during a period of time, the employee must be paid at least the minimum wage . . . for the period of time the employee's opportunity to earn commissions or piece rate.

11   *See* Pls.' Request J. Notice, Ex. 1, at 1, ECF No. 18.  As a matter of common sense, an employer

12   will face no costly recordkeeping burden if it must pay its employees for rest breaks whose

13   minimum length and frequency are dictated by law.  Plaintiffs allege they normally take two daily

14   fifteen-minute breaks.  Compl. ¶ 4.  Assuming this is true, Sun Pacific could meet its minimum-

15   wage obligation by adding a thirty-minute increment of the minimum hourly wage to the

16   plaintiffs' paychecks for each day worked.

17          In sum, the Wage Order's early adoption history weighs against *Bluford's*

18   continued viability, but all other interpretive aids weigh in *Bluford's* favor.  This court is bound to

19   apply *Bluford* and to deny Sun Pacific's motion.  *See Ryman*, 505 F.3d at 994.

20   /////

21   /////

22   /////

23

24          [5] According to its first page, the "Enforcement Policies and Interpretations Manual
summarizes the policies and interpretations which DLSE has followed and continues to follow in
discharging its duty to administer and enforce the labor statutes and regulations of the State of
25   California."  DLSE Enforcement Policies and Interpretations Manual (rev. Mar. 2006), available
at http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf.  The court grants plaintiffs'
26   request for judicial notice of this document, a public document published on an official State
website.  *See Ontiveros*, 2009 WL 425962, at *2 n.3 (taking judicial notice of the same manual as
27   a public document).

28

11

1    V.       CONCLUSION

2            The motion is DENIED.  This order resolves ECF No. 9.  Sun Pacific shall answer

3    the complaint within fourteen days.

4            IT IS SO ORDERED.

5    DATED: June 5, 2015.

6

7    _____

8    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28